(C. D. 1395)

WALKER SERVICES v. UNITED STATES

United States Customs Court, Third Division

(Decided March 4, 1952)

*Henry L. Ziegel* for the plaintiff.
*Charles J. Wagner*, Acting Assistant Attorney General (*Harold L. Grossman* special attorney), for the defendant.

Before CLINE, EKWALL, and JOHNSON, Judges; CLINE, J., not participating

EKWALL, Judge: We have before us here the dutiable classification and assessment upon a quantity of what is described on the invoices as "settled lime juice," imported from the British West Indies and entered at the port of Boston, Mass. Eight protests were consolidated for trial. As to seven of the cases, the collector of customs at the port of entry assessed duty at 35 cents per gallon as fruit juice, not specially provided for, under the provisions of paragraph 806 (a) of the Tariff

Act of 1930 (19 U. S. C. §1001, par. 806 (a)), as modified by the trade agreement with the United Kingdom, T. D. 49753. As to those protests, the plaintiff claims that duty is properly assessable at 2½ cents per pound, the rate applicable to the juice of limes, unfit for beverage purposes, in paragraph 48 of the same act (19 U. S. C. §1001, par. 48), as modified by the trade agreement with Mexico, T. D. 50797. As to the remaining protest, No. 151967–K, assessment was made and claim is likewise made under the same paragraphs at 20 cents per gallon and 1¼ cents per pound, respectively, as modified by the General Agreement on Tariffs and Trade (61 Stat., Pt. 5) and the President's proclamation thereunder (T. D. 51802).

It was conceded on behalf of the Government that the merchandise is the same in all material respects as the settled lime juice involved in *Von Laer* v. *United States*, 8 Cust. Ct. 517, Abstract 47184, and *Walker Services* v. *United States*, 21 Cust. Ct. 218, Abstract 52607. The records in those cases were incorporated herein. In the incorporated cases the court held that the commodity was juice of limes "unfit for beverage purposes," dutiable under paragraph 48, *supra*, as claimed by the plaintiff herein.

In the instant case, the plaintiff introduced the testimony of Mr. Mark B. Furber, the sole witness in the incorporated cases, for the purpose, as stated at the hearing, of further cross-examination. It developed from such cross-examination that all of the instant merchandise was sold by his company for beverage purposes, after it has been filtered to make it commercially salable. It is not sold in its condition as imported.

On being interrogated as to whether there was anything in the instant merchandise that would or could have a deleterious effect on an individual using it *in* a beverage, the witness replied in the negative. He was then asked:

X Q. Therefore, would you say, Mr. Witness, that in so far as deleterious effect on an individual using it in a beverage is concerned, there is no difference or distinction whatsoever between the merchandise as imported and the merchandise as filtered or processed?

To this question he replied:

A. Well, that is a very difficult question. Nobody would desire to drink it in the way it is imported. After it is filtered it is a nice looking piece of goods.

And further:

X Q. But would you say, Mr. Witness, there is no distinction or difference in so far as its deleterious effect is concerned?—A. Well, as far as hurting anybody, it wouldn't hurt anybody.

The witness further testified in answer to questions by plaintiff's counsel that the purpose of filtering the lime juice as imported was:

To remove all the seeds, pulp, and oil that we can, and to clear it. It is in a milky, a muddy-looking juice when we get it.

He was then asked:

X Q. So the purpose of the filtering process is to make the merchandise more salable?

To this he replied:

Salable, clear and crystal-like.

In Abstract 52607, the evidence showed that a portion of settled lime juice had been sold to scrub decks of yachts and vessels. The witness admitted at the present hearing that to the best of his knowledge this use was a thing of the past and that his firm had not had a sale for that purpose for 35 or 40 years.

On redirect examination, the witness stated that he had never sold the lime juice in question for beverage purposes in its imported condition; that it contains "leaves, sticks, most anything that naturally is thrown in," but he also stated that it contains "nothing that would hurt anybody." On re-cross-examination, he stated that he had never tried to sell it in its condition as imported and never offered it to the trade until after it had been filtered.

Counsel for the Government in the brief filed argues the question of construction of paragraph 48, *supra,* in connection with its legislative history. The same arguments were put forth in the case of *United States* v. *H. F. Ritchie & Co.,* 28 C. C. P. A. (Customs) 51, C. A. D. 124, which involved a commodity invoiced as "raw lime juice." In that case, the court said:

* * * There is a suggestion that by proper dilution the juice in its condition as imported might be used as, or in, a beverage without injury to the person, but the Government brief concedes that "Exhibit 1 [a sample of the imported juice], in its imported condition, is not customarily consumed as a beverage," and in the oral argument before us counsel for the Government very frankly stated it was not "potable" in its imported condition. We think the concessions so made were proper and from the record in the case we fully agree that the juice in its imported condition was unfit for beverage purposes.

Therefore, inasmuch as the imported merchandise was of a character falling squarely within the express language of paragraph 48, *supra,* and not elsewhere described in the Tariff Act of 1930, ordinarily it would seem unnecessary to go further in this decision than to affirm the judgment of the trial court.

Before us, however, the Government has advanced a theory which requires consideration. This theory, as stated in its brief, is that "Paragraph 48 is intended to provide for only those articles which are used in the manufacture of citric acid and which are inherently unfit for human consumption," and to support the theory certain legislative history is cited.

The court there held that the Government's theory was not sustained by the legislative history relied on and that there was nothing in the text of the act itself which sustained it.

We have given careful consideration to this question but find nothing new in the arguments advanced in the Government brief in support of its position from those as outlined in the decided case. In fact, they appear to be merely a reiteration of the Government's position, as presented to this court and to the Court of Customs and Patent Appeals. The court, there, in deciding adversely to the Government said:

Had the Congress desired to limit paragraph 48, *supra*, to such lime juice as is used only, or solely, for making citric acid, language could easily have been found to express such purpose. To hold with the Government theory here, in effect, would place the court in the attitude of reading into the statute a limitation which the legislative body did not see fit to express. The product here at issue is *eo nomine* described in paragraph 48, *supra*, and nothing has been presented which leads us to the conclusion that the trial court committed error.

We find nothing in the instant case as presented to cause us to depart from the decisions in the incorporated cases which held the commodity dutiable under paragraph 48, *supra*, as juice of limes, unfit for beverage purposes, as claimed by the plaintiff.

Judgment will be rendered accordingly.